**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | | |
|---|---|---|
| DAVID KRAWCZYK, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | CASE NO.: 06-C-6273 |
| | ) | |
| CENTURION CAPITAL CORPORATION, | ) | Judge Robert M. Dow, Jr. |
| ET AL., | ) | |
| | ) | |
| Defendants. | ) | |

### MEMORANDUM OPINION AND ORDER

Plaintiff David Krawczyk has brought this lawsuit against Defendants Centurion Capital Corporation, Blatt, Hasenmiller, Leibsker & Moore, LLC, and Palisades Acquisition XVI, LLC, for alleged violations of the Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C. § 1692, et seq., and malicious prosecution. Defendants have moved for summary judgment on all six counts of Plaintiffs' second amended complaint [69], and Plaintiff has moved for summary judgment as to Counts I, II, III, and V [72]. Plaintiff also has moved to strike the declarations of Cheryl Kavanagh, Peter Fish, and Kenneth Wake [81], which Defendants submitted in support of their motion for summary judgment. For the following reasons, the Court grants Defendants' motion for summary judgment [69] as to Counts I, II, III, V, and VI and dismisses Count IV without prejudice. The Court denies Plaintiff's motion for summary judgment [72] in its entirety, and also denies Plaintiff's motion to strike the declarations of Cheryl Kavanagh, Peter Fish, and Kenneth Wake [81].

## I.    Factual Background

On July 25, 2006, Defendant Centurion Capital Corporation ("Centurion"), through its attorneys at Defendant Blatt, Hasenmiller, Leibsker & Moore, LLC ("Blatt"), [1] filed a collection lawsuit against Plaintiff David Krawczyk in the Circuit Court of Cook County, Illinois, captioned *Centurion Capital Corp. v. Krawczyk* and bearing the case number 06 M1 158141. The lawsuit alleged that Centurion was the assignee of Providian Bank, the financial institution with which Plaintiff allegedly opened a charge account. According to the state court complaint, Plaintiff charged purchases to his Providian account but failed to make the required monthly payments, resulting in a debt of $1,261.98. The affidavit listed the account holder as David Krawczyk and the account number as 4479 4505 2330 8592.

According to Plaintiff's deposition, the last payment that he made on his account with Providian Bank was in 1999, before he moved from California to Illinois. He claims that he closed his account with Providian before he moved to Chicago and that the closing of his account was the last contact that he had with Providian. He also testified that prior to being served with the state court lawsuit, he never had any contact or communication with Centurion or Blatt.

The picture painted by Defendants, through the affidavits of Cheryl Kavanagh, vice president of Centurion, and Kenneth Wake, a partner at Blatt, is quite different. Kavanagh claims that Centurion purchased a portfolio of defaulted debt from Capital One on December 8, 2005, which contained Plaintiff's debt for his Providian National Bank credit card account. Defendants contend that upon purchasing Plaintiff's debt, Centurion received information from Capital One regarding the debt, including the credit card number, the amount of the debt, the

---

[1] Blatt is a law firm specializing in bankruptcy and consumer debt collection.

date Providian National Bank "charged off" the debt,[2] the date of the last payment made by Plaintiff on the debt, and Plaintiff's last known address and social security number. Defendants claim that this information showed that Plaintiff owed $1,261.98 on his account, that Providian charged off the debt on June 28, 1999, and that Plaintiff's last payment on that account was made on March 5, 2004, in the amount of $484.00.

Centurion retained Blatt to collect on Plaintiff's debt and to represent Centurion in the event that litigation was necessary to collect the alleged debt. Blatt, through the affidavit of Wake, claims that it sent an initial demand letter to Plaintiff on June 2, 2006, and that the letter contained the validation notice required pursuant to 15 U.S.C. § 1692g(a) along with the amount of the debt and the creditor's name. According to the declaration of Wake, once an account is loaded onto Blatt's computer system, the system automatically generates an initial demand letter by inserting the account specific information into what otherwise is a standardized form letter. Blatt's computerized account notes show that the initial demand letter was sent to Plaintiff on June 2, 2006, and that the letter was addressed to 5 N. Wabash Ave., Chicago, Illinois, 60602-4703.[3]

The state court collection lawsuit was set for trial on November 14, 2006. On November 2, 2006, Plaintiff (defendant in the state court action) filed a motion to dismiss the collection lawsuit pursuant to § 2-619 of the Illinois Code of Civil Procedure, asserting that the collection lawsuit was based upon an account that did not exist and, even if the account did exist, the suit was filed outside the applicable limitations period. On November 14, 2006, Centurion and Blatt

---

[2] A "charge off" is the removal of an account from a credit card issuer's books as an asset after it has been delinquent for a period of time, usually 180 days. See, *e.g.*, Black's Law Dictionary (8th ed. 2004).

[3] Plaintiff admits residing at and receiving mail at that address.

agreed to voluntarily dismiss the collection lawsuit against Plaintiff.  On November 16, 2006, Plaintiff filed suit in this Court against Centurion and Blatt.

On February 3, 2007, Defendant Palisades Acquisition XVI, LLC ("Palisades") purchased a portfolio of defaulted debt from Centurion, which included Plaintiff's debt at issue in the present lawsuit.  On March 26, 2007, Blatt and Palisades sent Plaintiff's counsel a letter regarding the same credit card account that had been the subject of the state court action.  The letter, composed on Blatt stationary, stated that Palisades had purchased Plaintiff's account (4479 4505 2330 8592) from Centurion and contended that Plaintiff owed $1,419.38 on the account. The letter stated that it was an "attempt to collect a debt" and that the firm was acting pursuant to the Fair Debt Collection Practices Act, 15 U.S.C.A. § 1692, et seq.  The letter also included the following provision:

> If you do not dispute the validity of this debt, or any portion thereof, within 30 days of receipt of this letter, we will assume it is valid.  If you do dispute the validity of this debt, or any portion thereof, please notify us in writing, within 30 days of receipt of this letter and we will mail verification of the debt, or a copy of a judgment, if applicable, to you.  We will also provide you with the name and address of the original creditor, if different from the current Creditor, if you request the same from us, in writing, within 30 days of receipt of this letter.

Plaintiff stated in his deposition that he did not receive this letter and had never seen it prior to his deposition.

On May 2, 2007, Plaintiff amended his complaint in this case, adding Palisades as a defendant.  Plaintiff's six-count second amended complaint alleges the following causes of action:  Count I alleges a violation of § 1692e(2)(A) of the FDCPA against Centurion and Blatt; Count II alleges a violation of § 1692f(1) against Centurion and Blatt; Count III alleges a violation of § 1692g against Centurion and Blatt; Count IV alleges malicious prosecution against Centurion and Blatt; Count V alleges a violation of § 1692e(2)(A) against Palisades and Blatt;

and Count VI alleges a violation of § 1692f(1) against Palisades and Blatt. Defendants' second amended answer includes the following affirmative defense: "Any violation of the FDCPA was not intentional and resulted from a bona fide error notwithstanding the maintenance of procedures reasonably adapted to avoid such error." See 15 U.S.C § 1692k(c). Defendants have moved for summary judgment on all counts of Plaintiff's second amended complaint, while Plaintiff has moved for summary judgment on Counts I, II, III, and V.

## II.      Motion to Strike Declarations

Before moving to the merits of the parties' motions for summary judgment, Plaintiff asks the Court to strike, in whole or in part, the declarations of Cheryl Kavanagh (a vice president of Defendant Centurion), Peter Fish (director of litigation for Defendant Palisades), and Kenneth Wake (a partner with Defendant Blatt), which were submitted by Defendants in their Local Rule 56.1 Statement of Material Facts and in their Response to Plaintiff's Local Rule 56.1 Statement of Facts and Statement of Additional Facts. Plaintiff argues that the declarations of Kavanagh and Fish should be excluded because they are based on hearsay, fail to comply with Rule 56(e), and were made by declarants whom Defendants failed to disclose in their Rule 26(a) disclosures. Plaintiff contends that the declaration of Wake should be excluded because it is hearsay and fails to comply with Rule 56(e).

Federal Rule of Evidence 801(c) defines hearsay as "a statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted." Fed. R. Evid. 801(c). "[H]earsay is inadmissible in summary judgment proceedings to the same extent that it is inadmissible in a trial." *Eisenstadt v. Centel Corp.*, 113 F.3d 738, 742 (7th Cir. 1997). Plaintiff contends that declarations should not be admitted under the business records exception to the hearsay rule because the records that form the basis for the

statements in the declarations are based on the records of another entity, Capital One, and Capital One's records are based on the records of yet another entity, Providian National Bank. Defendants first respond that the information in the affidavits regarding Plaintiff's account is not offered to prove that Plaintiff actually owed a debt in the amount of $1,261.98 or that his last payment on the account was on March 5, 2004, in the amount of $484.00. Rather, Defendants argue that this information is offered to establish that Centurion and Palisades had a good faith reason for pursuing collection actions against Plaintiff. Defendants also argue that the records fit within the business record exception to the hearsay rule.

If information is not offered for its truth, it cannot qualify as hearsay. With respect to the information in the affidavits, Defendants argue that it is being offered to explain why both Centurion and Palisades believed they had the right to initiate collection proceedings. In other words, it is being offered to show the effect that the information had on Centurion and Palisades. See *Woods v. City of Chicago*, 234 F.3d 979, 986 (7th Cir. 2000) (finding that district court did not run "afoul" of the prohibition on hearsay by considering statement strictly to determine the "effect" that they would have upon arresting officers). To the extent that the states of mind of both Centurion and Palisades in instituting debt collection proceedings are at issue in this case, the affidavits of Kavanagh and Fish may be used to show the effect the information had on Defendants.

The Court also is persuaded by Defendants' argument that the records of Centurion and Palisades fall under the business records exception to the hearsay rule. Rule 803(6) provides that regularly kept business records may be admitted to prove the truth of the matters asserted therein because they are presumed to be exceptionally reliable. Fed. R. Evid. 803(6); *U.S. v. Emenogha*, 1 F.3d 473, 483-484 (7th Cir. 1993). To qualify as business records under Rule 803(6), "1) the

document must be prepared in the normal course of business; 2) it must be made at or near the time of the events it records; and 3) it must be based on the personal knowledge of the entrant or on the personal knowledge of an informant having a business duty to transmit the information to the entrant." *Datamatic Servs., Inc. v. United States*, 909 F.2d 1029, 1032 (7th Cir. 1990). "The admissibility of business records is entrusted to the broad discretion of the trial court, and the court's ruling will not be disturbed absent an abuse of that discretion." *Id.*

As recognized by the Massachusetts Supreme Judicial Court in *Beal Bank, SSB v. Eurich*, "[t]he problem of proving a debt that has been assigned several times is of great importance to mortgage lenders and financial institutions." 831 N.E.2d 909, 914 (Mass. 2005) (citing *New England Sav. Bank v. Bedford Realty Corp.,* 717 A.2d 713 (1998)). Given the common practice of financial institutions buying and selling loans, the court in *Beal* determined that it is normal business practice to maintain accurate business records regarding such loans and to provide them to those acquiring the loan. *Id.*; see also *Federal Deposit Ins. Corp. v. Staudinger,* 797 F.2d 908, 910 (10th Cir. 1986) ("foundation for admissibility may at times be predicated on judicial notice of the nature of the business and the nature of the records * * * particularly in the case of bank and similar statements"). The court concluded that the bank was not required to provide testimony from a witness with personal knowledge regarding the maintenance of the predecessors' business records because the bank's reliance on this type of record keeping by others rendered the records the equivalent of the bank's own records. See also *U.S. v. Adefehinti*, 510 F.3d 319, 326 (D.C. Cir. 2007) (finding that pursuant to "the rule of incorporation," the record of which a business takes custody is thereby "made" by the business within the meaning of the rule); *Matter of Ollag Construction Equipment Corp*., 665 F.2d 43, 46 (2d Cir. 1981) (finding that "business records are admissible if witnesses testify that the records are integrated

into a company's records and relied upon in its day-to-day operations"); *U.S. v. Carranco*, 551 F.2d 1197, 1200 (10th Cir. 1977) (holding that freight bills, though drafted by other companies, were business records of a shipping company because they were "adopted and relied upon by" the shipping company).  The *Beal* court also stated that "to hold otherwise would severely impair the ability of assignees of debt to collect the debt due because the assignee's business records of the debt are necessarily premised on the payment records of its predecessors."  831 N.E.2d at 914.[4]

Plaintiff argues that the second and third business record requirements are not satisfied because (i) Centurion's and Palisades' records were not created at or near the time the alleged debt arose (or even at the time of Plaintiff's last payment) and (ii) Kavanagh did not have personal knowledge of the creation of the record.  To qualify documents as business records, Rule 803(6) does not require the witness herself to have created the records about which she is testifying.  See *Thanongsinh v. Board of Educ.*, 462 F.3d 762, 777 (7th Cir. 2006); *U.S. v. Keplinger*, 776 F.2d 678, 693-94 (7th Cir. 1985) ("[T]he business records exception contains no requirement that a 'qualified witness' must have personally participated in the creation or maintenance of a document * * * nor even know who actually recorded the information") (internal citations omitted);  *U.S. v. Duncan*, 919 F.2d 981, 986 (5th Cir. 1990) ("There is no requirement that the witness who lays the foundation be the author of the record or be able to

---

[4]  Lastly, the *Beal* court noted that a debtor typically would have records of any payment made and thus would readily be able to demonstrate any error in prior credits or calculations. 831 N.E.2d at 819 n. 4.  In the present case, Plaintiff claims that he has no documents related to his Providian account, no account statements, no cancelled checks, and no proof that any payment was made on his Providian debt. Additionally, Plaintiff could not recall where he banked at the time that he had the Providian credit card, so Defendants were unable to compare their records with Plaintiff's to confirm any payments Plaintiff may have made.  Finally, according to Defendants and not disputed by Plaintiff, Plaintiff did not conduct any discovery in this matter.

personally attest to its accuracy."). Rather, a custodian or otherwise qualified witness must explain the record-keeping procedures of the organization and testify that she has knowledge of the procedures under which the records were created. *Thanongsinh*, 462 F.3d at 777. Moreover, personal knowledge of business records may be inferred from a declarant's position within a company. *Jenkins v. Heintz*, 124 F.3d 824, 831 (7th Cir. 1997). Ultimately, the primary emphasis of Rule 803(6) is on the "reliability or trustworthiness of the records sought to be introduced."

Relying on the previously set forth principles as well as those espoused by the court in *Beal*, this Court finds that Centurion integrated the Capital One records into its own records and relied upon them in its daily operations. Centurion relied upon the information provided by Capital One when attempting to collect on Plaintiff's defaulted debt. Centurion, as a debt collector, was aware of the penalties for attempting to collect bogus debts; therefore, its reliance on the records provides another assurance of reliability. Kavanagh's affidavit attests that she has personal knowledge of Centurion's record-keeping, she is competent to testify to those matters, and she has reviewed and is familiar with the records relating to Plaintiff's debt. She further explains how Centurion's automated collection system database created the record of Plaintiff's alleged defaulted debt on December 8, 2005, the same day Centurion purchased the debt from Capital One as part of a portfolio of defaults. As soon as Centurion had the information available to it, it created a record containing Plaintiff's credit card number, the amount of the debt, the last date of payment, and the debtor's last known address and social security number. Additionally, the record was transferred from Capital One to Centurion's automated collection system database without alteration. Although Kavanagh did not author the record in question, the business record exception does not impose any such requirement. See *Duncan*, 919 F.2d at

986. Kavanagh's affidavit, testifying to the records that Centurion received from Capital One, is reliable and can be relied upon in support of summary judgment. And, for the same reasons, the affidavit of Peter Fish is deemed reliable and also can be used in support of Defendants' motion for summary judgment.[5]

Plaintiff argues that the declaration of Kenneth Wake is inadmissible hearsay because Wake did not personally send a disclosure letter to Plaintiff. Defendants argue that it falls under the business records exception to the hearsay rule. As set forth earlier, to establish that a writing falls under the business records exception, the party need not produce the individual who actually created the record. See *Thanongsinh*, 462 F.3d at 777. A party must produce a records custodian who has knowledge of the record-keeping practices and who can testify that such records are kept in the ordinary course of business. *Id*. In Wake's affidavit, he stated that he is familiar with the record-keeping procedures of Blatt and he explained those procedures in detail. He explained that when his firm receives a collection account from a client, its collection software system generates an initial demand letter that contains a validation notice required by § 1692g of the FDCPA. According to Wake, Plaintiff's account information shows that Blatt sent such a letter to Plaintiff on June 2, 2006. According to Wake's records, the letter was sent to the address Plaintiff had on file, and there is no record of that letter being undeliverable or returned. Even though Wake did not personally send the letter to Plaintiff, he has sufficient personal knowledge of Blatt's record-keeping procedures such that the information relied upon in his affidavit falls under the business records exception to the hearsay rule. See *Jenkins v. Heintz*, 124 F.3d 824, 831 (7th Cir. 1997) (law firm partner was permitted to make statements under oath

---

[5] Fish's affidavit attests that Palisades received Plaintiff's account information in the ordinary course of business upon purchasing Plaintiff's alleged debt from Centurion. According to Fish, all of the information was transferred into Palisades' automated collection system database without alteration. Fish also stated that he had reviewed Palisades' records and could testify competently with respect to the records kept by Palisades.

"concerning the firm's numerous business records").  Moreover, the Court deems the sample form letter attached to Wake's affidavit to be representative of the initial demand letter that Blatt's system generates for each collection account.

Finally, the Court is not persuaded by Plaintiff's argument that the affidavits of Kavanagh and Fish should be stricken because they were not properly disclosed as persons with discoverable information as required by Federal Rule of Civil Procedure Rule 26(a).  In their Rule 26(a) disclosures, Defendants identified "unknown representatives" of Centurion and Palisades.  These disclosures adequately notified Plaintiff that Defendants might use information from company representatives to support their claims or defenses.  Rule 26(a) initial disclosures are just that – preliminary disclosures – and are not intended to be a substitute for conducting the necessary discovery.  Plaintiff could have filed a notice for a Rule 30(b)(6) deposition of the Centurion or Palisades representatives, but he failed to do so.  Any prejudice to Plaintiff resulted from not conducting his own discovery with respect to Defendants' witnesses, not from Defendants' bad faith or willfulness in failing to specify the names of the representatives whom they intended to use.  See, *e.g.*, *David v. Caterpillar, Inc.*, 324 F.3d 851, 857 (7th Cir. 2003).

For these reasons, the Court denies Plaintiff's motion to strike the declarations of Cheryl Kavanagh, Peter Fish, and Kenneth Wake and will consider the declarations in ruling on summary judgment motions.

## III.    Legal Standard

Summary judgment is proper where "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."  Fed. R. Civ. P. 56(c).  In determining whether there is a genuine issue of fact,

the Court "must construe the facts and draw all reasonable inferences in the light most favorable to the nonmoving party." *Foley v. City of Lafayette, Ind.,* 359 F.3d 925, 928 (7th Cir. 2004). To avoid summary judgment, the opposing party must go beyond the pleadings and "set forth specific facts showing that there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 250 (1986) (internal quotation marks and citation omitted). A genuine issue of material fact exists if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.* at 248. The party seeking summary judgment has the burden of establishing the lack of any genuine issue of material fact. See *Celotex Corp. v. Catrett,* 477 U.S. 317, 323 (1986). Summary judgment is proper against "a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Id.* at 322. The non-moving party "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.,* 475 U.S. 574, 586 (1986). "The mere existence of a scintilla of evidence in support of the [non-movant's] position will be insufficient; there must be evidence on which the jury could reasonably find for the [non-movant]." *Anderson,* 477 U.S. at 252.

The issue before this Court is not whether, as a matter of law, Plaintiff owes Defendants on the credit card account he originally had with Providian. That matter was appropriate for the state court collection suit, where Centurion and Blatt carried the burden of proof, but that action was dismissed by agreement of the parties. Rather, the issue is whether Defendants violated the FDCPA in the manner in which they sought to collect the purported debt by sending Plaintiff letters and filing a civil suit. In other words, did Defendants use unfair or unconscionable collection methods, engage in conduct meant to harass, oppress, or abuse Plaintiff, or make false,

deceptive, or misleading statements in the letters or lawsuit? These are issues upon which Plaintiff would bear the burden of proof at trial. If there is an absence of evidence to support Plaintiff's FDCPA claims, or if no specific facts establish genuine issues for trial, Defendants are entitled to summary judgment.

## IV. Discussion

### A. Sections 1692e(2)(A) and 1692f(1)

In Count I, Plaintiff alleges that Defendants Centurion and Blatt violated 15 U.S.C. § 1692e by (1) falsely stating the amount of the debt in the state court lawsuit; and (2) falsely claiming an account stated of $1,261.98 in the state court lawsuit. In Count II, Plaintiff alleges that Defendants Centurion and Blatt violated 15 U.S.C. § 1692f by (1) suing Plaintiff on a debt he did not owe; (2) failing to attach to the state court complaint the underlying credit card contract and evidence of assignments; (3) asserting an account stated without providing evidence of the account stated; and (4) filing a lawsuit when Centurion was not licensed to do business in Illinois.[6]

The FDCPA was enacted by Congress to protect consumers who have been victimized by unscrupulous debt collectors, regardless of whether there is a valid debt owed. See, *e.g.*, *Baker*

---

[6] In his second amended complaint, Plaintiff alleges that Centurion violated 15 U.S.C. § 1692f by filing a lawsuit when Centurion was not licensed to do business in Illinois. In their motion for summary judgment, Defendants argue that Centurion was not required to be licensed in Illinois to file the collection lawsuit because (i) filing a lawsuit does not constitute "transacting business" as defined by the Business Corporation Act (see 805 ILCS 5/13.75; *St. Louis Hills Urological Assoc. v. Nicoletti*, 506 N.E.2d 602, 603 (5th Dist. 1987)), and (ii) a foreign corporation is not required to register with the state of Illinois when it conducts interstate commerce (see *Career Concepts, Inc. v. Synergy, Inc.*, 865 N.E.2d 385, 392 (Ill. App. Ct. 1st Dist. 2007)). Plaintiff did not respond to either of these arguments and advanced no arguments in support of his assertion that Centurion violated § 1692f by not being licensed in Illinois. In view of the authority cited by Defendants, as well as the absence of any argument at all, much less citation to contrary authority, by Plaintiff, the Court finds that Centurion did not violate the FDCPA by filing the state court lawsuit when it was not licensed or registered in Illinois. See *Rice v. Palisades Acquisition XVI, LLC*, 2008 WL 538921, at *4 (N.D. Ill. Feb. 25, 2008) (finding that by maintaining a lawsuit against a plaintiff, Centurion had not transacted business in Illinois and had not violated the FDCPA by not registering in Illinois prior to filing a collection lawsuit).

*v. G.C. Services Corp.*, 677 F.2d 775 (9th Cir. 1982).  A central purpose of the FDCPA is "to eliminate abusive debt collection practices by debt collectors."  15 U.S.C. § 1692e.  In relevant part, Section 1692e prohibits a debt collector from using "any false, deceptive, or misleading representation or means in connection with the collection of any debt" and lists the following among examples of prohibited conduct:  false representation of "the character, amount, or legal status of any debt," a "threat to take any action that cannot legally be taken or that is not intended to be taken," and "[t]he use of any false representation or deceptive means to collect or attempt to collect any debt or to obtain information concerning a consumer."  15 U.S.C. §§ 1692e(2), (5) & (10).  The FDCPA also prohibits debt collectors from using "unfair or unconscionable means to collect or attempt to collect any debt."  15 U.S.C. § 1692f.  Unconscionable and unfair conduct includes collecting any amount (*e.g.,* interest, fees, and other charges) unless the amount is "expressly authorized by the agreement creating the debt or permitted by law."  15 U.S.C. § 1692f(1).  Courts view FDCPA claims "through the eyes of an 'unsophisticated debtor.'" *McMillan v. Collection Prof'ls Inc.*, 455 F.3d 754, 758 (7th Cir. 2006) (citation omitted).

The Seventh Circuit has held that "§ 1692e applies even when a false representation was unintentional." *Gearing v. Check Brokerage Corp.*, 233 F.3d 469, 472 (7th Cir. 2000) (citing *Russell v. Equifax A.R.S.*, 74 F.3d 30, 33 (2d Cir. 1996) (because the Act imposes strict liability, a consumer need not show intentional conduct by the debt collector to be entitled to damages)); see also *Randolph v. IMBS, Inc.*, 368 F.3d 726, 730 (7th Cir. 2004) ("[Section] 1692e(2)(A) creates a strict-liability rule").  Moreover, the test for determining whether a debt collector violated § 1692e is objective, "turning not on the question of what the debt collector knew but on whether the debt collector's communication would deceive or mislead an unsophisticated, but reasonable, consumer." *Turner v. J.V.D.B. & Asso., Inc.*, 330 F.3d 991, 995 (7th Cir. 2003); see

also *McMillan v. Collection Prof'ls Inc.*, 455 F.3d 754, 758 (7th Cir. 2006) (citation omitted). Despite the strict construction of the statute, a debt collector that violates any substantive provision of the FDCPA can avoid liability by proving by a preponderance of the evidence that (i) the violation was unintentional, resulting from a "bona fide error," and (2) that error occurred "notwithstanding the maintenance of procedures reasonably adapted to avoid any such error." *Jenkins v. Heintz*, 124 F.3d 824, 828 (7th Cir. 1997).

Plaintiff grounds his claim on what he contends were procedural defects in the state court complaint – claims that he also raised in his motion to dismiss the state court action but that were never adjudicated because that motion was stricken by the court when the parties agreed to dismissal of the state court suit without prejudice. Plaintiff contends that Defendants falsely stated the amount of the debt because they failed to attach a copy of the credit card contract to the state court complaint. However, attaching a copy of the credit card contract to a complaint has no impact on the truth or falsity of the amount of the debt; it may have some bearing on the ultimate weight of the evidence, but failing to attach the agreement to the complaint does not make the allegation of indebtedness "false."

Moreover, it seems to be the well within the province of the state court judge to make the determination as to what must be attached to a state court pleading. Although it did not resolve the issue, in *Beler v. Blatt Hasenmiller Leibsker & Moore*, 480 F.3d 470, 473 (7th Cir. 2007), the Seventh Circuit noted that "it is far from clear that the FDCPA controls the contents of pleadings filed in state court." In *Beler*, the plaintiff filed an FDCPA lawsuit against the defendant claiming that the defendant's state court collection complaint violated the FDCPA because the allegations were allegedly confusing and unclear. *Id.* at 472. The *Beler* court observed that "[t]his theory assumes that the [FDCPA] regulates the contents of complaints, affidavits, and

other papers filed in state court." *Id.* Referring to its earlier decision in *Thomas v. Simpson & Cybak*, 392 F.3d 914 (7th Cir. 2004), the Court noted:

> But *Thomas* did not imply that the FDCPA dictates the complaint's contents; to the contrary, we suggested (though we did not have an occasion to hold) that the state's rules of procedure, not federal law, determine which facts, and how much detail, must be included in documents filed with a clerk of court for presentation to a judge * * * * Given [a recent] amendment and the limited rationale of *Thomas* itself, it is far from clear that the FDCPA controls the contents of pleadings filed in state court.

While not definitive, this language suggests that a judgment about the quality of the pleadings and evidence submitted in state court should be left to the discretion of the state court judge.

Furthermore, "[e]ven when viewed from the perspective of the unsophisticated consumer, the filing of a debt collection lawsuit * * * does not have the natural consequence of harassing, abusing or oppressing the debtor. Any attempt to collect a defaulted debt will be unwanted * * * but employing the court system * * * cannot be said to be an abusive tactic under the FDCPA." *Harvey v. Great Seneca Fin. Corp.*, 453 F.3d 324, 330-31 (6th Cir. 2006). Losing or voluntarily dismissing a collection case does not by itself create an FDCPA claim against the creditor and its attorneys. Filing a lawsuit is an authorized method of collecting a debt. *Id.* at 330. And while Illinois pleading standards are stricter than federal pleading standards under Rule 8, Centurion was not required to have all of its proof in the state court case at the pleading stage of the state court lawsuit. Defendants attached to the state court complaint an affidavit stating the name of the credit card issuer, the account number, and the amount of the debt. Defendants also alleged that Centurion was "the assignee of said account from Providian Bank having purchased said account in the regular course of business in good faith and for value." While this information may not have been sufficient to carry the day at trial, it would be sufficient under state or federal pleading standards.

Federal courts have recognized that filing a collection lawsuit without the immediate means of proving the debt does not violate the FDCPA because a defendant is entitled to request more information or details about a plaintiff's claim. See *Harvey*, 435 F.3d at 330-31; *Clark v. Unifund CCR Partners*, 2007 WL 1258113 (W.D. Pa. 2007). As set forth by the court in *Deere v. Javitch*:

> [F]iling a lawsuit supported by the client's affidavit attesting to the existence and amount of a debt is not a false representation about the character or legal status of a debt, nor is it unfair or unconscionable. A defendant in any lawsuit is entitled to request more information or details about a plaintiff's claim, either through formal pleadings challenging a complaint, or through discovery. [Plaintiff] does not allege that anything in the state court complaint was false, or that the complaint was baseless. She essentially alleges that more of a paper trail should have been in the lawyers' hands or attached to the complaint. The FDCPA imposes no such obligation.

413 F. Supp. 2d 886, 891 (S. D. Ohio 2006). Centurion had a good faith basis for pursuing its collection action in state court. Plaintiff's claim that Defendants Centurion and Blatt made a false, deceptive, or misleading representation by attaching the "Affidavit in Support of Judgment" to the state court complaint, without attaching further documentary evidence of debt, is insufficient to sustain a claim under the FDCPA.

Plaintiff also argues that Defendants brought a time-barred lawsuit. Plaintiff asserts that he closed his Providian account in August 1999. He testified that at some point around the time he closed his Providian account or shortly thereafter, he paid "what I believed I owed," which was less than what Providian said he owed. SMF ¶ 32. Although he cannot personally recall when the payment was made, the account data obtained by Centurion indicates that Plaintiff made a payment of $484 on March 5, 2004, within five years of the date Centurion filed its state

court collection action.[7]  Plaintiff argues, without citation to persuasive or controlling authority, that even if the Court found sufficient evidence of a payment made in March 2004, that payment does not toll or reset the statute of limitations.   However, both Illinois state courts and courts in this district have found that "part payment of a debt tolls the statute of limitations such that it commences to run from the date of last payment."  *St. Francis Medical Center v. Vernon*, 576 N.E.2d 1230, 1231 (Ill. App. Ct. 5th Dist. 1991) (citing *Department of Mental Health v. Mitchell*, 324 N.E.2d 94, 96 (Ill. 1975)); see also *Davis v. World Credit Fund I, LLC*, 543 F. Supp. 2d 953, 957 (N.D. Ill. 2008); *Parkis v. Arrow Fin. Serv*., 2008 WL 94798, at *6 (N.D. Ill. Jan. 8, 2008) ("five year statutory period [for unwritten agreements] commences with either the charge off date or the last date of payment").   Therefore, if Plaintiff made a payment in March 2004, the five year statutory period would run from that date and the collection action was not time-barred. However, Plaintiff testified that he did not make the payment.  Defendants intimate that Plaintiff may have a selective memory, suggesting that Plaintiff appears to be able to recall the facts that are helpful to his case, but not the facts that may be harmful.[8]  But to wade into that thicket would require the Court to make credibility determinations, which it cannot do at this stage of the case.  See, *e.g.*, *AHP Subsidiary Holding Co. v. Stuart Hale Co.*, 1 F.3d 611, 619 (7th Cir. 1993) ("the district court cannot weigh credibility issues at the summary judgment stage"); *cf. Davis v. World Credit Fund I, LLC*, 543 F. Supp. 2d 953, 957 (N.D. Ill. 2008) (granting

---

[7]  As noted above, although Plaintiff has argued that the affidavits of Cheryl Kavanagh and Peter Fish are inadmissible hearsay because they are not based on the personal knowledge of the declarants, the Court has ruled that the declarations are admissible under the business records exception to the hearsay rule.

[8] In his discovery responses, Plaintiff stated that he had no documents related to his Providian account, no account statements, no cancelled checks, and no proof that any payment was made on his Providian debt. Additionally, Plaintiff could not recall where he banked at the time that he had the Providian credit card, so Defendants were unable to compare their records with Plaintiff's to confirm any payments Plaintiff may have made.  However, Plaintiff stated that he does remember when he closed his account, that he paid off his credit shortly after closing account, and that he did not owe what Providian says he owed, yet he cannot recall where he banked or other specifics.

summary judgment on §§ 1692e(2)(A) and 1692f(1) claims when plaintiff did not dispute that he made a payment towards balance within five years of statute of limitations).

As the foregoing discussion indicates, there is a genuine issue of material fact as to whether Plaintiff made the March 2004 payment that, if made, would render the state court lawsuit timely. However, a debt collector that violates any substantive provision of the FDCPA still may avoid liability by proving by a preponderance of the evidence that (i) the violation was unintentional, resulting from a "bona fide error," and (2) that error occurred "not-withstanding the maintenance of procedures reasonably adapted to avoid any such error." *Jenkins v. Heintz*, 124 F.3d 824, 828 (7th Cir. 1997). Or, as Defendants have put it, "Centurion had a good faith belief for pursuing its collection action in state court, and that is all that is required." Def. SJ Mem. at 6; see also Def. Opp. Mem. at 9 (same).

To prevail on a "bona fide error" defense, a debt collector need only show that its FDCPA violation was unintentional, not that its actions were unintentional. See *Nielsen v. Dickerson*, 307 F.3d 623, 641 (7th Cir. 2002) (debt collector "may avail itself of the bona fide error defense because it had no intent to violate the FDCPA, although its actions were deliberate"). Therefore, even though the Court has determined that a genuine issue of material fact exists as to whether Plaintiff made a payment that reset the statute of limitations, Defendants can still avoid liability at the summary judgment stage if they can demonstrate the absence of a triable issue of fact under the bona fide error defense.

In the present case, relying on records which the Court has found to be reliable in denying Plaintiffs' motion to strike, Defendants determined that Plaintiff had made a payment in March 2004. Even if that determination were an "error," it was bona fide. "That is, if made, it was an error made in good faith; a genuine mistake, as opposed to a contrived mistake." *Kort v.*

*Diversified Collection Services, Inc.*, 394 F.3d 530, 538 (7th Cir. 2005). Defendants were relying on the business records received from Capital One, which Centurion integrated into its own records and relied upon in its daily operations. Centurion, as a debt collector, was aware of the penalties for attempting to collect bogus debts, therefore its reliance on the records provides another assurance of reliability.

Moreover, Defendants employed procedures reasonably adapted to avoid the alleged error. Kavanagh's affidavit explains how Centurion's automated collection system database created the record of Plaintiff's debt.[9] Centurion created the record of Plaintiff's alleged defaulted debt on December 8, 2005, the same day that Centurion purchased the debt from Capital One as part of a portfolio of defaults. As soon as Centurion had the information available to it, it created a record containing Plaintiff's credit card number, the amount of the debt, the last date of payment, and the debtor's last known address and social security number. Additionally, the record was transferred from Capital One to Centurion's automated collection system database without alteration. "§ 1692k(c) does not require debt collectors to take every conceivable precaution to avoid errors; rather, it only requires *reasonable precaution*." *Kort*, 394 F.3d at 539 (affirming the grant of summary judgment to debt collector that asserted the bona fide error defense). Plaintiff has not presented any evidence to suggest that Defendants' procedures were not reasonable. Furthermore, "the FDCPA does not require collectors to independently verify the validity of the debt to qualify for the 'bona fide error' defense." *Hyman v. Tate*, 362 F.3d 965, 968 (7th Cir. 2004) (citing *Jenkins v. Heintz*, 124 F.3d 824, 834-35 (7th Cir. 1997)) (collector qualified for "bona fide error" defense where it had in place procedures to

---

[9]  Kavanagh attests that she has personal knowledge of Centurion's record-keeping, she is competent to testify to those matters, and she has reviewed and is familiar with the records relating to Plaintiff's debt.

prevent violations of the FDCPA, and the collector was not required to independently investigate and evaluate the validity of forced placed insurance charges)); see also *Smith v. Transworld Sys., Inc.*, 953 F.2d 1025, 1032 (6th Cir. 1992) (concluding that the "bona fide error" defense does not require a collector to conduct an independent investigation of the debt referred for collection). Therefore, Centurion was entitled to rely on Capital One's records and Centurion's own procedures for accepting and using those records. Any other rule would require financial institutions to verify every entry in the account history of every loan that it bought from another institution – an untenable proposition absent a red flag concerning the record keeping practices of the prior institution. See *Beal Bank*, 831 N.E.2d at 914. In sum, based on the evidence adduced at summary judgment, the Court finds that Defendants employed procedures reasonably adapted to avoid the assumed error. Thus, Defendants are entitled to invoke the bona fide error defense and summary judgment in favor of Defendants Centurion and Blatt is appropriate on Counts I and II of Plaintiff's complaint.

**B.      Section 1692g**

In Count III, Plaintiff alleges that Defendants Centurion and Blatt never "gave" him notice required under § 1692g and that the first contact he had from Blatt was when he was served with the Cook County complaint on August 8, 2006. Section 1692g(a) of the FDCPA provides:

> Within five days after the initial communication with a consumer in connection with the collection of any debt, a debt collector shall, unless the following information is contained in the initial communication or the consumer has paid the debt, send the consumer a written notice containing (1) the amount of the debt; (2) the name of the creditor to whom the debt is owed; (3) a statement that unless the consumer, within thirty days after receipt of the notice, disputes the validity of the debt, or any portion thereof, the debt will be assumed to be valid by the debt collector; (4) a statement that if the consumer notifies the debt collector in writing within the thirty-day period that the debt, or any portion thereof, is disputed, the debt collector will obtain verification of the debt or a copy of a

judgment against the consumer and a copy of such verification or judgment will be mailed to the consumer by the debt collector; and (5) a statement that, upon the consumer's written request within the thirty-day period, the debt collector will provide the consumer with the name and address of the original creditor, if different from the current creditor.

15 U.S.C. § 1692g(a). Blatt has provided evidence that on June 2, 2006, two months prior to filing the state court lawsuit, Blatt, on behalf of Centurion, first contacted Plaintiff by sending to his home address a letter stating the amount of the debt and the creditor's name and providing the validation notice as required by § 1692g(a). Def.'s SMF 11, 13. Kenneth Wake, a partner at Blatt, testified about the process by which new collection accounts are received and downloaded into the computer system. Once the account is loaded, the computer automatically generates the initial demand letter by inserting the account-specific information into what is otherwise a form letter. Blatt provided the Court with an example form letter and that letter contains the required FDCPA validation notice. Blatt's computerized account notes confirm that the initial demand letter was sent on June 2, 2006. The June 2 letter was addressed to the same address (5 N. Wabash, Chicago, Illinois 60602) where Plaintiff subsequently was served (on August 9, 2006) with the state court lawsuit. The letter was not returned to Blatt. SMF 14.

Plaintiff offers no evidence to rebut the fact that the June 2, 2006 letter was sent and that it contained the required validation notice.[10] Rather, Plaintiff asserts that he never received it. The FDCPA only requires the debt collector to send the notice, not to establish actual receipt. *Mahon v. Credit Bureau of Placer County Inc.*, 171 F.3d 1197, 1201-02 (9th Cir. 1999) (debt collector must prove only that the notice was sent, not that it was actually received by the consumer); *Zamos v. Asset Acceptance, LLC*, 423 F. Supp. 2d 777, 786 (N.D. Ohio 2006); *Van Westrienen v. Americontinental Collection Corp.*, 94 F. Supp. 2d 1087, 1096-98 (D. Ore. 2000).

---

[10] Plaintiff also claims that he never received any phone calls from Blatt (see Krawczyk Dep. pp. 43:22-44:5), even though Blatt's records reflect over thirty messages left on his answering machine, and two actual conversations with his wife (see Blatt SMF Ex. 3, ¶¶ 7, 9).

Had Congress wanted to impose such an obligation, it could have required debt collectors to send the validation notice by certified or registered mail, or via personal service, but it chose not to do so. See *Walters v. PDI Management Servs.*, 2004 WL 1622217, at *6 (S.D. Ind. April 6, 2004) (declining to find any certified mail requirement in Section 1692g, whether for debt collectors sending the validation notice or consumers sending a dispute).

Moreover, under the "mailbox rule," when a letter is mailed, a legal presumption arises that the letter was received. *Boomer v. AT&T Corp.*, 309 F.3d 404, 415 n. 5 (7th Cir. 2002) ("Where a letter is properly addressed and mailed, there is a presumption that it reached its destination in usual time and was actually received by the person to whom it was addressed.") (internal quotations omitted). A party "need not show conclusively that a document was placed in the mail; a custom or policy of mailing creates a presumption that such mailing occurred." Johnston, 2006 WL 2710663, *3 (N.D. Ill. Sept. 15, 2006).

Plaintiff cannot rebut the presumption simply by claiming that he did not receive the letter. He did not submit any evidence to contradict Blatt's evidence that it followed its ordinary business practices and procedures in sending Plaintiff the notice. The Court concludes that there is no genuine dispute of fact that Blatt sent the required Validation of Debt Notice to Plaintiff as required by Section 1692g. See also *Meckel v. Continental Resources Co.*, 758 F.2d 811, 817 (2d Cir. 1985) (proof of proper mailing raises presumption that contents were received and some proof beyond mere denial of receipt must be adduced to overcome presumption and thereby survive summary judgment); *Moore v. Blatt, Hasenmiller, Leibsker & Moore, LLC*, 2006 WL 1806195 (C.D. Ill. June 29, 2006) (finding that "[b]ased on Ken Wake's affidavit, the Court concludes Blatt has established that the [validation notice] letter was mailed in a manner consistent with its regular office practices and procedures"). Because Centurion and Blatt

complied with Section 1692g(a) by sending the letter to Plaintiff, summary judgment in favor of Defendants Centurion and Blatt is proper as to Count III.

### C. Counts V and VI Against Palisades and Blatt

After the dismissal of the state court collection case against Plaintiff, Centurion sold Plaintiff's alleged debt to Defendant Palisades. Plaintiff's Counts V and VI – the same causes of actions asserted against Centurion and Blatt in Counts I and II – arise from a letter sent to Plaintiff's attorneys informing them that Plaintiff's debt had been purchased by Palisades and that Blatt was attempting to collect the debt on behalf of Palisades. Plaintiff alleges that the letter sent by Blatt on behalf of Palisades: (1) misrepresented that an alleged debt was owed at all, in violation of § 1692e; (2) misrepresented that "the alleged debt is not time-barred even though [Blatt] was made aware of this by Plaintiff's attorney on multiple occasions," also in violation of § 1692e; and (3) threatened to sue Plaintiff in an attempt to collect a debt from him that he did not owe, in violation of § 1692f.

Applying the same reasoning set forth in assessing Counts I and II, the Court determines that, even if genuine issues of material fact exist as to whether a debt was owed and whether it was time-barred, Defendants are entitled to the bona fide error defense. In his affidavit, Peter Fish, director of litigation for Palisades, attests that Palisades received Plaintiff's account information in the ordinary course of business upon purchasing Plaintiff's alleged debt from Centurion. According to Fish, all of the information was transferred into Palisades' automated collection system database without alteration. That information included the credit card account number, the amount of the debt, the date Providian National Bank charged off the debt, the date of the last payment made by Plaintiff on the debt, and Plaintiff's last known address and social security number. Fish also stated that he had reviewed Palisades' records and could testify

competently with respect to the records kept by Palisades. The Court has also determined, in ruling on the motion to strike and in assessing the merits of Count III, that Defendant Blatt followed its ordinary business practices and procedures in investigating Plaintiff's alleged debt.[11] Thus, the Court determines that any error made by Blatt and Palisades was made in good faith, any violation of the FDCPA was unintentional, and the assumed error occurred, if at all, despite the maintenance of procedures reasonably adapted to avoid any such error. Blatt and Palisades are entitled to the bona fide error defense and summary judgment in favor of Defendants Palisades and Blatt is appropriate on Counts V and VI of Plaintiff's complaint.

### D. Malicious Prosecution Against Centurion and Blatt

The Court's disposition of Plaintiff's FDCPA claims leaves only Plaintiff's state law claim for malicious prosecution. The Court's original jurisdiction in this case was based on the FDCPA, a federal statute. See 28 U.S.C. § 1331 (federal question jurisdiction). The Court had supplemental jurisdiction over the state law malicious prosecution claim. See 28 U.S.C. § 1367(a). However, because the Court will grant summary judgment in favor of Defendants on all FDCPA claims, original jurisdiction is now lacking. As the Seventh Circuit consistently has stated, "it is the well-established law of this circuit that the usual practice is to dismiss without prejudice state supplemental claims whenever all federal claims have been dismissed prior to trial." *Groce v. Eli Lilly & Co.*, 193 F.3d 496, 501 (7th Cir. 1999); *Alonzi v. Budget Constr. Co.*, 55 F.3d 331, 334 (7th Cir. 1995); *Brazinski v. Amoco Petroleum Additivies Co.*, 6 F.3d 1176, 1182 (7th Cir. 1993). Finding no justification to depart from that "usual practice" in this case, the Court dismisses *without prejudice* the state law malicious prosecution claim asserted in Count IV of Plaintiff's second amended complaint.

---

[11] As previously noted by the Court, Plaintiff has not submitted any evidence to contradict Blatt's evidence that it followed its ordinary business practices and procedures in investigating Plaintiff's alleged debt and in sending Plaintiff notices required by the FDCPA.

**V.      Conclusion**

For these reasons, the Court grants Defendants' motion for summary judgment [69] as to Counts I, II, III, V, and VI and dismisses Count IV without prejudice.  The Court denies Plaintiff's motion for summary judgment [72] in its entirety, and also denies Plaintiff's motion to strike the declarations of Cheryl Kavanagh, Peter Fish, and Kenneth Wake [81].

Dated:  February 18, 2009

_____
Robert M. Dow, Jr.
United States District Judge